IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| OLUWANIKE ARALA, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-16-1300 |
| § | |
| PENTAIR VALVES AND CONTROLS, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge pursuant to 28 U.S.C. § 636(b)(1)(A),(B), is Defendant's Motion for Summary Judgment (Document No. 42). Having considered the motion, Plaintiff's responses in opposition (Document Nos. 43 & 47), Defendant's replies (Document Nos. 46 & 48), all the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 42) be GRANTED.

### I. Background and Procedural History

This is an employment discrimination case brought by Oluwanike Arala ("Arala") against her current employer, Pentair Valves and Controls ("Pentair"), for race and sex discrimination, and retaliation. In her "Employment Discrimination Complaint" (Document No. 4 at 2), Arala alleges that Pentair hired her "but did not pay 'planner' salary for 4 mos.;" non[-]black male employees that were on a probation [were] paid more;" and Pentair put her on "a 'PIP' after [she] fil[ed] with the EEOC." The context for Arala's allegations of discrimination and retaliation are contained in the EEOC charge she filed, which was attached to her Complaint, and are as follows:

I.   I have been employed with Pentair Valves and Controls since January, 2013. In July, 2013, I was approached by management and asked to work as a HCI Planner. I was told that my title and pay would change. After a month, my job title had not been changed or my salary. When I questioned this, I was told that there was a 60 day "trial period." This was not explained to me when I was asked to take the position. After many weeks of no response, I spoke directly to the Plant Manager. Finally, I was given an offer letter. However, the salary offered was much less than what is normally paid to other Planners. I signed the offer letter because I am a single parent. I was not paid for the three months that I worked as a Planner.

II.  Other employees (Julian Soliz and Michelle LaChapelle) who have been placed in the Planner position were given an immediate salary increase and a change in their job titles.

III. I believe that I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Document No. 4 at 6).

Pentair, in its Motion for Summary Judgment, argues that summary judgment is warranted on Arala's discrimination and retaliation claims because: (1) Arala cannot show that she was treated differently than similarly situated employees outside of her protected class (female, African-American); (2) there is no evidence that Pentair's reason for not paying Arala at the high Planner I salary for a period of months was "pretext" for discrimination; (3) Arala did not, and has not, suffered an adverse employment action; and (4) there is no causal connection between Arala's filing of an EEOC complaint and her performance evaluation, which resulted in a "PIP" (performance improvement plan"). Arala, in her initial response (Document No. 43 at 6), first maintained that the Motion for Summary Judgment was not timely filed, and objected to many of the statements in Defendant's Motion for Summary Judgment ("Plaintiff is also objecting to the following statements in Defendant's Motion for Summary Judgment. Each statement below by the Defendant is not fact, and is only their perception of a portion of the evidence that has been brought forward during

discovery."). In her subsequent response (Document No. 47), Arala again objected to many of the same "statements" of Defendant in its Motion for Summary Judgment, but then pointed to Juan Perez and Julian Solis as "the two non-African American males that were paid more than the Plaintiff." She also argues that three African American males (Corey Newby, Peter Kangethe and Roderick McKinney) were paid less than their non-African American counterparts, and that Pentair's varying explanations for her reduction in salary upon her re-assignment to the sales department is evidence of pretext.

At the outset, it must be noted that Arala's complaints about the timeliness of Pentair's Motion for Summary Judgment have no merit. The Docket Control Order entered in this case on October 27, 2016, set July 14, 2017, as the deadline for the filing of dispositive motions. (Document No. 26). Pentair's Motion for Summary Judgment, filed on July 14, 2017, was timely.

## II. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380

(5th Cir. 1998).[1] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby*, 106 S. Ct. 2505, 2513 (1986).

### III.    Title VII Discrimination and Retaliation

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

§ 2000e-2(a)(1). Title VII also proscribes an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3.

To prevail on a claim of disparate treatment discrimination, as is at issue in this case, a plaintiff must either offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). There is no direct evidence of discrimination in this case.[2]

Under the indirect method of proof set forth in *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case of disparate treatment discrimination under Title VII requires proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris Cty.*, 197 F.3d 173, 184 (5th Cir. 1999). Under Title VII, sex, race, and national origin are all protected classes. 42 U.S.C. § 2000e-et seq. A plaintiff is "qualified" for a position if the "objective requirements" for the position are met.

---

[2] "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and must not be subject to interpretation as anything other than a reflection of bias. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Davis v. Chevron U.S.A. Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)); *see also Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) ("A comment demonstrates an employer's discriminatory intent if it is 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'") (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)).

*Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). A plaintiff suffers an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir. 1998) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 761). A plaintiff is treated "less favorably" when the defendant gives preferential treatment to [a member outside the protected class] under 'nearly identical' circumstances." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Aguinaga v. Tex. Alcohol and Beverage Comm'n*, 98 Fed. Appx. 328, 331, 2004 WL 1161914 (5th Cir. 2004) (the differing treatment must be under nearly identical circumstances to satisfy the fourth element of a *prima facie* case of disparate treatment). Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason'" for the defendant's adverse hiring decision. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *Id.*; *McDonnell Douglas*, 411 U.S. at 802-803. To demonstrate a "pretext for discrimination" the plaintiff must show that the employer's proffered reason was false, that is, not its true reason, or that the reason is "unworthy of credence". *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) ("A plaintiff may show

6

pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"). A plaintiff can avoid summary judgment on a Title VII claim if, at the third step of the burden shifting analysis, the plaintiff can "substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720.

For retaliation claims under Title VII, a plaintiff must also first establish a *prima facie* case of retaliation, with proof that: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment decision. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1998). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). What constitutes an "adverse employment action" for purposes of a retaliation claim is not the same as what constitutes an adverse employment action for purposes of a disparate treatment claim. In *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006), the United States Supreme Court made it clear that for purposes of the anti-retaliation provisions of Title VII, an adverse employment action is not limited to ultimate employment decisions, but instead encompasses actions taken by an employer that are harmful enough that it "might have dissuaded a reasonable worker from" engaging in protected activity. Thus, what constitutes an adverse employment action for purposes of a retaliation claim is highly dependent upon the context and circumstances at issue. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *see also Monsivais v. Arbitron, Inc.*, 44 F. Supp. 3d 702, 707 (S.D. Tex. 2014) (what constitutes an adverse employment action for a

retaliation claim is "an objective fact-specific review 'because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'") (quoting *Burlington N.*, 548 U.S. 53, 69)). As for the *prima facie* requirement of a causal link between protected activity and an adverse employment action, the timing of an adverse employment action in relation to when an employee engaged in a protected activity "can be a significant, although not necessarily determinative, factor" in determining whether a causal nexus exists. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *see, e.g., Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that a ten month lapse between filing a complaint with a supervisor and an adverse employment action failed to support an inference of retaliation). At the *prima facie* stage, a "but for" causal link need not be shown. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Sherrod*, 132 F.3d at 1122. If the defendant carries this burden, the plaintiff must prove that the stated nondiscriminatory reason for the adverse employment action is a "pretext" for retaliation by showing that a retaliatory motive likely motivated the employer or by showing that the employer's proffered reason is "unworthy of credence." *Lawson v. Parker Hannifin Corp.*, 614 F.App'x 725, 730 (5th Cir. 2015). To carry the ultimate burden on a retaliation claim, a plaintiff must show that a defendant would not have taken the adverse employment action "but for" the plaintiff's participation in the protected activity. *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999).

## IV. Discussion

### A. Discrimination Claim(s)

Arala's discrimination claim, as alleged in her Complaint and in the charge she filed with the EEOC, was premised entirely on her change in position from an Expeditor in the sales department to a Planner I in the materials department, which was not accompanied by an immediate change in her job title and her salary.[3] In her response to Pentair's Motion for Summary Judgment, Arala now appears to also claim that she was discriminated against when she left the Planner I position and returned to an Expeditor-type position in the sales department. The basis of both claims is that she was paid less than she was due. Because Arala's discrimination claim is premised on a differential in pay, she has, arguably, established a *prima facie* case of discrimination with respect to the Planner I position.

"To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that [s]he was a member of a protected class and that [s]he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv.*, 554 F.3d 510, 522 (5th Cir. 2008). Here, the summary judgment evidence shows that Arala is a member of a protected class: she is female and African-American. The summary judgment evidence also shows that Arala was paid less than Juan Perez, Julian Solis and Michelle LaChapelle, all of whom are outside of her protected classes, in the position of Planner I. Arala was paid $44,000, while Juan Perez and Julian Solis were each paid $47,500, and Michelle LaChapelle was paid $57,500. *See* Exhibits A-7, A-8, A-9, B-15 to Defendant's Motion for Summary Judgment (Document No. 42-1

---

[3] This was discussed at length during the Scheduling Conference held on September 9, 2016. *See* Transcript (Document No. 18).

9

at 46, 47, 48; 42-2 at 55-60). Arala has therefore established a *prima facie* case of discrimination in compensation for the Planner I position.

As for the alleged differential in pay Arala complains about upon her return to an Expeditor-like position in the sales department,[4] Arala has not established a *prima facie* case of race or sex discrimination. While the summary judgment evidence shows that Anna Bell *was* paid more than Arala, she was employed as an inside sales representative, whereas Arala's position in the sales department was in an Expeditor-type position. Given their different positions, Anna Bell cannot serve as a comparator for purposes of establishing a *prima facie* case of discrimination. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011).

Having determined that Arala has established a *prima facie* case of discrimination in compensation for the Planner I position, the burden shifts to Pentair to articulate a legitimate, nondiscriminatory reason for the pay differential for the Planner I position. Pentair has met that burden. Pentair's legitimate, non-discriminatory reason for paying Solis and Perez more than Arala in the Planner I position was the higher salaries Solis and Perez commanded before they accepted the Planner I positions, as well as Perez' longer tenure with Pentair. Pentair's reason for paying LaChapelle more than Arala in the Planner I position was that she was hired from the outside for that position and did not require a transition/probationary period, and she had a significantly higher salary than Arala prior to her employment with Pentair as a Planner I.[5] Those reasons are supported by the

---

[4] The position of "Logistics Materials Handler II" in the sales department was the successor to the Expeditor position in the sales department.

[5] Pentair maintains in its Motion for Summary Judgment that prior to her hire as a full time employee of Pentair in the Planner I position, it paid a temporary agency for Michelle LaChapelle's work at a rate of $38.70 per hour, which was well in excess of the calculated hourly rate earned by Arala earned before she was given the Planner I position. While there is summary

summary judgment evidence, which shows Solis' annualized salary was $41,600 prior to being given the Planner I position and, Perez' annual salary was $35,360 prior to being given the Planner I position. Exhibits A-7 and A-9 to Defendant's Motion for Summary Judgment (Document No. 42-1 at 46, 48). Arala's annual salary, in contrast, was $33,280 prior to being given the Planner I position. Exhibit A-8 to Defendant's Motion for Summary Judgment (Document No. 42-1 at 47). In addition, the summary judgment evidence shows that Perez had been employed by Pentair since 2008, whereas Arala, after working in a temporary position through a staffing agency for a year and a half, was hired by Pentair as full-time employee in January 2013. Exhibits A-7 and A-8 to Defendant's Motion for Summary Judgment (Document No. 42-1 at 46, 47). As for LaChapelle, the summary judgment evidence shows that she, unlike Arala, Solis and Perez, was offered the Planner I position as a "new hire," without a transition or probationary period. Exhibit B-15 to Defendant's Motion for Summary Judgment (Document No. 42-2 at 55-60).

Against those articulated, and supported reasons for the differential in pay, Arala has only offered speculation and conjecture of race and sex discrimination, and has, in particular, pointed to no summary judgment evidence from which it could be inferred that Arala's race and/or sex was the real reason for the pay differential.[6] At this last stage of the *McDonnell Douglas* burden shifting

---

judgment evidence in the record that shows LaChapelle was paid $57,500 in the Planner I position, Exhibit B-15 to Defendant's Motion for Summary Judgment (Document No. 42-2 at 55-60), there is no summary judgment evidence of what LaChapelle's salary was, either on an hourly or annualized basis, before she was given the Planner I position.

[6] The higher salaries of Roderick McKinney and Peter Kangethe in the Planner I position do not and cannot evidence race discrimination. McKinney and Kangethe, two African-American males, were paid the same amount as Solis and Perez in the Planner I position ($47,500). See Exhibits J and L to Plaintiff's First Amended Opposition to Defendant's Motion for Summary Judgment (Document No. 47-1 at 15, 23). As for whether the $47,500 salaries of McKinney and Kangethe could serve as some summary judgment evidence of pretext to support

analysis, it is Arala's burden to come forth with summary judgment evidence that calls into question Pentair's legitimate, non-discriminatory reasons for the pay differential. This she has not done.

As for Arala's complaints that she was not given an immediate increase in salary and a change in her job title upon her commencement of the Planner I responsibilities, Arala has not shown that either Solis or Perez were treated any differently. Both Solis and Perez were chosen at the same time as Arala to transition to the Planner I position, and both were given a salary increase and job title change on the same date as Arala (November 11, 2013). *See* Exhibits A-3, A-7, A-9, and B-4 to Defendant's Motion for Summary Judgment (Document No. 42-1 at 38-39, 46, 48; Document No. 42-2 at 13-17). As for Michelle LaChapelle, she was offered a position as a Planner I as a "new hire," not as a transitioning Pentair employee from another department. Although there is some summary judgment that suggests that there was no clear understanding at the time Pentair recruited employees from within for the Planner I position that there was to be a probationary period during which no change in job title or salary was made, *see* Exhibit B-3 and B-5 to Defendant's Motion for Summary Judgment (Document No. 42-2 at 1, 19-21), there is no summary judgment evidence that anyone who transitioned either to or from the Planner I position as a Pentair employee was treated less favorably than Arala. In addition, there is no summary judgment evidence in the record from which it could be inferred that the imposition of a probationary period for the Planner I position was based on Arala's sex or race.

---

a sex discrimination claim, Arala has not articulated, or argued that the salaries of McKinney and Kangethe are suggestive of sex discrimination. She has also not premised her sex discrimination claim on the pay differential between she and McKinney/Kangethe in the Planner I position. Even if she had, there is no summary judgment evidence that the pay differential was based on Arala's sex. Somewhat like Solis and Perez, McKinney was, prior to being offered the Planner I position, employed by Pentair as a Production Scheduler, earning $45,000 per year. Kangethe, like LaChapelle, was a new hire.

In all, while there is evidence that Arala was paid less than others who were employed in the Planner I position, there is no summary judgment evidence which raises a genuine issue of material fact on whether Pentair's reasons for the pay differential for those employed in the Planner I position was a pretext for race and/or sex discrimination. Accordingly, summary judgment is warranted on Arala's race and sex discrimination claim(s).

B.     Retaliation Claim

As contained in her Complaint and in her EEOC charge, Arala's retaliation claim is based on allegations that she was given a poor performance review and placed on a performance improvement plan ("PIP") after she complained of discrimination and filed an EEOC charge. In her response to Pentair's Motion for Summary Judgment, however, Arala also appears to maintain that Pentair retaliated against her by reducing her salary after she asked to be transferred from the Planner I position back to an Expeditor-type position in the sales department. The absence of any evidence of pretext defeats Arala's retaliation claim(s).

While there is some temporal proximity between Arala's complaints of discrimination and her poor performance evaluation in January 2014, Arala has come forth with no summary judgment evidence to show that the deficiencies found in her performance evaluation were not true, or were a pretext for retaliation. Arala has also not come forth with any summary judgment evidence that her supervisors at Pentair who completed her performance review and placed her on a PIP knew of her EEOC filing. Arala, therefore, has no summary judgment evidence that supports her retaliation claim vis-a-vis her performance review and/or her PIP.[7]

---

[7] Pentair argues that the Arala's poor performance evaluation and her PIP cannot constitute an adverse employment action for purposes of a retaliation claim as a matter of law. Following the Supreme Court's decision in *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53,

13

As for Arala's complained-of reduction in pay once she returned to the sales department from the position as a Planner I, the uncontroverted summary judgment evidence shows that Arala requested the return to the sales department, was aware that her request, if granted, would constitute a demotion, and knew that the position she would return to in the sales department could come with a reduction in her salary. *See* Exhibit B-7 to Defendant's Motion for Summary Judgment (Document No. 42-2 at 27-30). In addition, the uncontroverted summary judgment evidence shows that during the pendency of Arala's EEOC complaint, she was promoted in the sales department several times and attained a significantly higher salary than that she earned in the Planner I position. Exhibit A-8 to Defendant's Motion for Summary Judgment (Document No. 42-1 at 47).

Upon this record, there is, quite simply, no summary judgment evidence that supports Arala's claim(s) of retaliation. Pentair is, therefore, also entitled to summary judgment on Arala's retaliation claim(s).

## VII. Conclusion and Recommendation

Based on the foregoing, and the conclusion that summary judgment is warranted in Defendant Pentair Valves and Controls's favor on all of Arala's claims, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 42) be GRANTED, and that summary judgment be granted in Defendant's favor on all of Plaintiffs' claims.

---

68 (2006), it is not entirely clear what can and cannot constitute an adverse employment action for purposes of a retaliation claim. *See e.g., Al-habash v. Raytheon Co.*, No. 4:15CV450, 2016 WL 6155601, at *9 (E.D. Tex. Oct. 24, 2016) (finding that PIP could constitute an adverse employment action).

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 16th day of September, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE